Raymond C. Awe v. Commissioner. Victor P. Lucia v. Commissioner.
Awe v. Commissioner
Docket Nos. 13320, 14409.
United States Tax Court
1948 Tax Ct. Memo LEXIS 129; 7 T.C.M. (CCH) 519; T.C.M. (RIA) 48136; July 29, 1948
*129 Petitioners Awe and Lucia were sole members of a partnership during the period from April 1, 1942 through December 31, 1943. Awe claimed a deduction on his 1942 individual Federal income tax return attributable to partnership traveling expenses in 1942. Lucia claimed a deduction on his 1943 individual Federal income tax return due to a capital loss suffered in that year. Both Awe and Lucia on their respective 1943 Federal income tax returns claimed a deduction resulting from the partnership's net loss for the year 1943. The Commissioner's determination disallowing these deductions and increasing the net income of Awe for 1942 and increasing the net income of both Awe and Lucia for 1943 is sustained due to a failure of proof on the part of petitioners. Henry P. Rosin, Esq., for the petitioner, Raymond C. Awe. Victor P. Lucia, pro se. Wesley A. Dierberger, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: The case of Raymond C. Awe, Docket No. 13320, and the case of Victor P. Lucia, Docket No. 14409, were combined for hearing by the Court. The Commissioner determined a deficiency in the income and victory tax liability of *130 petitioner, Raymond C. Awe, for the taxable year ended December 31, 1943, in the amount of $7,992.71, and a penalty of $1,998.18 due to failure to file the 1943 income and victory tax return within the time prescribed by law. The Commissioner determined a deficiency in the income and victory tax liability of petitioner, Victor P. Lucia, for the taxable year ended December 31, 1943, in the amount of $17,944.41, and a penalty of $4,486 due to failure to file the 1943 income and victory tax return within the time prescribed by law. Adjustments were made by the Commissioner in both petitioners' income tax returns for the taxable year ended December 31, 1942, which are reflected in the deficiency determined in the taxable year ended December 31, 1943, in accordance with the provisions of the Current Tax Payment Act of 1943. Petitioner Awe places in controversy: (1) the Commissioner's determination that his distributive share of the net income of the partnership Ajax Engineering & Manufacturing Company was $1,005.92 more than that reported by him in his return for the taxable year ended December 31, 1942; and (2) the Commissioner's determination that his distributive share of the net *131 income of the partnership Ajax Engineering & Manufacturing Company was $20,350.97 for the taxable year ended December 31, 1943, instead of a loss of $500 as shown on his return. Petitioner, Lucia, contests: (1) the Commissioner's disallowance of a capital loss deduction of $1,000 in the taxable year ended December 31, 1943; and (2) the Commissioner's determination that his distributive share of the net income of the partnership Ajax Engineering & Manufacturing Company was $20,350.97 instead of a loss of $3,000 as shown on his return for the taxable year ended December 31, 1943. Neither petitioner contests the determination by the Commissioner of the penalty for failure to file his 1943 income and victory tax return within the time prescribed by law. The Federal income and victory tax return of the petitioner Awe for the taxable year ended December 31, 1943, was filed with the collector of internal revenue at Detroit, Michigan, on March 29, 1945. The Federal income and victory tax return of petitioner Lucia for the taxable year ended December 31, 1943, was filed with the collector of internal revenue at Detroit, Michigan, on January 18, 1945. Findings of Fact At the beginning *132 of the taxable year 1942 petitioner Awe was a partner with Messrs. Robinson and Wagner in a partnership known as Wagner Engineering & Manufacturing Company. In March 1942 petitioner Awe and Robinson bought out Wagner's interest and continued the partnership under the name of Ajax Engineering Service Company. It operated from March 1942 until July 1942. On July 1, 1942, Robinson and petitioners Awe and Lucia formed a partnership known as Ajax Engineering & Manufacturing Company (hereinafter referred to as Ajax); their interests in this new partnership were, respectively, 50 per cent, 25 per cent and 25 per cent. In December 1942 the three partners organized a corporation known as the Aeronautical Parts Corporation, of which they were the only officers and stockholders. The sole business of the corporation was the manufacture of shells resulting from a contract with Eastman Kodak Company. Most of the partnership's machinery and equipment was moved to the site of the Aeronautical Parts Corporation for the use of the corporation. While the partnership had been producing Halco heads and floating tool holders, it now switched to making tools for the corporation. The amended partnership *133 return filed for Ajax covering the period from July 1, 1942, through December 31, 1942, reported sales in the amount of $88,692.26, and a net profit in the amount of $11,367.83. Traveling expenses of $5,265.69 were reported on the return. The division of the profits shown on this return was as follows: Awe
$ 2,841.96
Lucia
2,841.96
Robinson
5,683.91
$11,367.83
The partnership return for Ajax filed for the period January 1, 1943 through March 31, 1943, reported sales in the amount of $54,786.87 and a net profit in the amount of $11,481.51. This profit was divided among the three partners as shown on the partnership return as follows: Awe
$ 2,870.38
Lucia
2,870.38
Robinson
5,740.75
$11,481.51
In March 1943 the two petitioners bought out Robinson's interest in Ajax and continued the firm as sole partners whereby each increased his interest in the partnership to 50 per cent. In October 1943 the contract between Aeronautical Parts Corporation and Eastman Kodak Company was cancelled, and the former went into bankruptcy in the same month. At that time a large part of the partnership's equipment was moved from the location of the Aeronautical *134 Parts Corporation to Ajax's new location on Erskine Street. From October 1943 until June 1944 Ajax continued to do business on a small scale, though there was a drastic reduction in the labor force due to a drop in orders following the bankruptcy of Aeronautical Parts Corporation. Finally, in June 1944, the partnership itself went into voluntary bankruptcy. No partnership returns were filed on behalf of Ajax for the period from March 31, 1943 through December 31, 1943. In the bankruptcy proceeding of June 1944 the partnership books and records were turned over to Earl J. Kuhn, the trustee in bankruptcy. Today the whereabouts of either the trustee or records of the partnership are unknown. Also the records of the purchasers of the partnership assets following the bankruptcy which might have shed light on the financial operations of Ajax in 1942 and 1943 were destroyed by fire. Opinion The following issues are in controversy in this case: (a) Did the Commissioner err in increasing the income of the petitioner, Raymond C. Awe, in the amount of $1,005.92, representing an increase in his distributive share of the net income of the partnership Ajax for the taxable year ended December 31, 1942? *135 (b) Was the petitioner, Victor P. Lucia, entitled to a capital loss deduction of $1,000 in the taxable year ended December 31, 1943? (c) Did the Commissioner err in determining that the distributive share of each of the petitioners, Awe and Lucia, in the net income of the partnership Ajax was $20,350.97 instead of a loss of $500 deducted by Awe and a loss of $3,000 deducted by Lucia on their respective Federal tax returns for the taxable year ended December 31, 1943? [1]
We think that the Commissioner's determination must be sustained on all three issues due to failure of the petitioners' evidence to rebut the presumption of correctness attaching to facts found by the Commissioner in his notice of deficiency. Wickwire v. Reinecke, 275 U.S. 101; Welch v. Helvering, 290 U.S. 111; Rogers et al. v. Commissioner, 111 Fed. (2d) 987; Estate of Harold W. Grant, 1 T.C. 731. (a) Did the Commissioner err in increasing the income of petitioner Awe in the amount of $1,005.92, representing an increase in his distributive share *136 of the net income of the partnership Ajax for the taxable year ended December 31, 1942? [2]
In Commissioner v. Flower, 326 U.S. 465, 470, the Supreme Court set forth the proof necessary to allow the deduction of traveling expenses under the statute: "Three conditions must thus be satisfied before a traveling expense deduction may be made under § 23(a)(1)(A): "(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling. "(2) The expense must be incurred 'while away from home.' "(3) The expense must be incurred while in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and the pursuit of the business or trade." The evidence presented on this issue at the hearing fails completely to satisfy these tests regarding *137 traveling expenses reported for Ajax in 1942. The only relevant testimony was petitioner Lucia's legal conclusion that the amounts set forth in the partnership returns for 1942 correctly represented partnership traveling expenses for 1942. Such testimony alone does not serve to disturb the Commissioner's determination. Louis Halle, 7 T.C. 245. No exhibits pertinent to the issue were presented. The only possible conclusion is to sustain the Commissioner's determination as presumptively correct. See Cohan v. Commissioner, 39 Fed. (2d) 540; Maurice P. O'Meara, 8 T.C. 622. (b) Was petitioner Lucia entitled to a capital loss deduction in the amount of $1,000 for the taxable year ended December 31, 1943? No testimony or exhibits were presented at the hearing by petitioner Lucia concerning this capital loss deduction. Even if it is assumed that stock held by Lucia in the Aeronautical Parts Corporation gave rise to the claimed loss due to the bankruptcy of the corporation in October 1943, the number of shares of such stock held by him and the cost basis to him were not shown. The judicial result of such a failure of proof is set forth in Livingston Worsted Company, 14 B.T.A. 700, 701: *138 "Issue being joined as to the facts alleged by the petitioner and denied by respondent, and error being denied on behalf of respondent, the burden of proof is cast upon the petitioner to establish by proper evidence its allegations. In this case it has submitted no evidence whatsoever and we have, therefore, no alternative other than to approve the deficiency determined by respondent." The Commissioner's determination disallowing the $1,000 capital loss deduction of petitioner Lucia is upheld. (c) Did the Commissioner err in determining that the distributive share of each of the petitioners Awe and Lucia in the net income of the partnership Ajax was $20,350.97 instead of a loss of $500 deducted by Awe and a loss of $3,000 deducted by Lucia on their respective Federal tax returns for the taxable year ended December 31, 1943? At the start of the year 1943 the partnership Ajax consisted of Robinson holding a 50 per cent interest, petitioner Awe holding a 25 per cent interest, and petitioner Lucia holding a 25 per cent interest. The partnership return covering the period from January 1, 1943 until March 31, 1943, showed sales in the amount of $54,786.87 and a net profit in the *139 amount of $11,481.51. Testimony reveals this business success was in a large measure due to the partnership's close tie with Aeronautical Parts Corporation which the partners had incorporated in December 1942. In March 1943 petitioners Awe and Lucia bought out Robinson's 50 per cent interest in Ajax and continued the business as sole partners, so that each acquired a 50 per cent interest thereby. Since neither petitioner recalled how this transaction took place and neither presented competent evidence to rebut the Commissioner's determination of these facts, his finding to this effect in the notice of deficiency prevails. Avery v. Commissioner, 22 Fed. (2d) 6; Greengard v. Commissioner, 29 Fed. (2d) 502; Rogers et al. v. Commissioner, supra. There is a total lack of competent evidence by the petitioners concerning the profits or losses of the partnership for the balance of the taxable year 1943 from March 31 to December 31. No partnership return was filed for this period. No books or records of the partnership business' operations were presented at the hearing. Assuming that such evidence either disappeared in the custody of the trustee *140 in bankruptcy in 1944 or was destroyed by fire, as contended by petitioners, yet they must bear the onus of such misfortune. Pennant Cafeteria Co., 5 B.T.A. 293; Aaron Samuelson, Executor, 10 B.T.A. 860. As the Court in Burnet v. Houston, 283 U.S. 223, 228, stated: "We cannot agree that the impossibility of establishing a specific fact, made essential by the statute as a prerequisite to the allowance of a loss, justifies a decision for the taxpayer based upon a consideration only of the remaining factors which the statute contemplates. The definite requirement of * * * the act is not thus easily to be put aside. The impossibility of proving a material fact upon which the right to relief depends simply leaves the claimant upon whom the burden rests with an unenforceable claim, a misfortune to be borne by him, as it must be borne in other cases, as the result of a failure of proof. * * *" The only evidence presented concerning the partnership operations was the testimony of petitioners Awe and Lucia. Awe's statement that he knew nothing about the financial operations of Ajax in the taxable year 1943 and that he did not know whether or not the *141 partnership made any money renders his testimony valueless. The selfserving statement of Lucia that the partnership suffered a loss of $4,000 in 1943 states a conclusion uncorroborated by competent testimony or records. In view of Lucia's vague and contradictory statements concerning the partnership operations in 1943, the evidentiary value of his testimony is very slight. In evaluating the uncontradicted testimony of these petitioners the comment of the Supreme Court in Quock Ting v. United States, 140 U.S. 417, 420, 421, is very appropriate: "Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying *142 may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced." See also Birnbaum v. Commissioner, 117 Fed. (2d) 395, and Andrew Jergens Co., et al. v. Conner, 125 Fed. (2d) 686. From the evidence in the record it appears probable that the financial operations of the partnership were quite successful until the contract between Aeronautical Parts Corporation and Eastman Kodak Company was canceled in October 1943. At that time the partnership's orders fell off to such an extent that it was forced to move to smaller quarters and reduce its working force to a handful of men. Yet petitioners have been unable to present sufficient concrete evidence of partnership losses from October through December 1943 as would rebut the presumption of correctness which attaches to the Commissioner's determination that Ajax realized a net profit in the year 1943. See Avery v. Commissioner, supra; Greengard v. Commissioner, supra; *143 Rogers, et al. v. Commissioner, supra.We therefore conclude that the Commissioner did not err in his determination that the distributive share of each of the petitioners Awe and Lucia in the net income of Ajax for the taxable year ending December 31, 1943, was $20,350.97. Decisions will be entered for respondent. Footnotes
1. Sections 181, 182 and 183 of the Internal Revenue Code↩ govern these three issues.
2. Section 23 (a) (1) (A) of the Internal Revenue Code↩ governs this issue.